IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LEHMAN BROTHERS HOLDINGS, INC.,   *
                                    *
              Plaintiff,      *
                                    *
vs.                              *     No. 4:10CV02012   SWW
                                    *
NATIONAL BANK OF ARKANSAS,      *
                                    *
              Defendant.     *

## Memorandum Opinion and Order

This is a breach of contract action brought by Lehman Brothers Holdings, Inc. ("LBHI")

against National Bank of Arkansas in North Little Rock, Arkansas ("NBA").  LBHI alleges NBA

breached certain warranties and representations it made regarding mortgage loans it sold Lehman

Brothers Bank, FSB ("LBB") and NBA is obligated under a written contract to repurchase the loans

or indemnify LBHI.  Now before the Court are several pending motions, including separate motions

for summary judgment filed by the parties.  For the reasons stated below, the Court denies NBA's

motion for summary judgment and grants in part and denies in part LBHI's motion for summary

judgment.

## Background[1]

NBA engages in mortgage lending as well as the sale of mortgage loans in the secondary

market to investors like Lehman Brothers Bank, FSB n/k/a Aurora Bank FSB ("LBB").  NBA entered

---

[1]Background information is based on the parties' Statements of Undisputed Material Facts filed with
the Motions for Summary Judgment. *See* docket entries 26-2, 62, 31, and 38-1.

into Loan Purchase Agreements with LBB, an affiliate of LBHI, dated September 19, 2002, and July 9, 2004, which governed LBB's purchase of loans from NBA.  The Loan Purchase Agreements incorporate the terms and provisions of a Seller's Guide published by  of Aurora Loan Services, LLC ("Aurora") and together constitute the "Agreement."  Section 8 of the Loan Purchase Agreements state that they are governed by the laws of the State of New York.

NBA sold various loans to LBB, including Loan Numbers ****4906 (" the Olt Loan"), ****0895, ****0937, ****6462, ****6595, and ****8109 ("the Dwek Loans"), pursuant to the Agreement, and LBB paid for them.  Aurora is the authorized agent, servicer, and/or master servicer for LBB and LBHI for certain mortgage loans in which LBB and LBHI have an interest, including the loans at issue in this case.  Aurora is authorized and directed by LBB and LBHI to enforce any obligations owed to them by parties selling mortgage loans in which LBB and/or LBHI have an interest.

On January 31, 2011, LBB and LBHI signed an Assignment Agreement which LBHI asserts assigned all of LBB's rights and remedies under the Loan Purchase Agreements with NBA to LBHI. The Seller's Guide applicable to all the loans listed above states that LBB purchased loans from NBA "in reliance upon (I) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase."  The Seller's Guide applicable to the Olt loan contains NBA's representation and warranty that "[t]he fair market value of the mortgage property as indicated by the property appraisal or valuation is materially accurate."  The Seller' Guide applicable to the Dwek loans contains NBA's representation and warranty that

> [t]he documents, instruments and agreements submitted for loan underwriting were
> not falsified and contain no untrue statement of material fact or omit to state a

material fact required to be stated therein or necessary to make the information and statements therein not misleading.  No fraud was committed in connection with the origination of the Mortgage Loan.  The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary of make and confirm the accuracy of the representations set forth herein.

The Seller's Guide applicable to all the loans states "[i]n the event of a breach of any of the representations, warranties or covenants contained in Section 700 through 710 herein, which breach materially and adversely affects the value of the Mortgage Loans or the interest of Purchaser, . . . Seller shall, at Purchaser's option, repurchase the related Mortgage Loan . . . at the Repurchase Price."  The Seller's Guide as to all the loans states that the repurchase "shall occur no later than thirty (30) days after the earlier of the date on which Purchaser notified Seller of such breach or the date on which Seller knows of such breach."  The Seller's Guide also contains an indemnification provision which states:

> In addition to any repurchase and cure obligations of Seller, . . . Seller shall indemnify Purchaser and Purchaser's designee . . . from and hold them harmless against all claims, losses, damages, penalties, fines, claims of forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.

LBB purchased the Olt loan from NBA on May 27, 2003, and sold the loan to LBHI on June 30, 2003.  The origination appraisal for the Olt loan that NBA obtained and sent to LBB stated that the market value of the subject property was $73,000 as of February 18, 2003.  LBHI asserts that the appraisal NBA submitted did not provide a materially accurate statement of the property's fair market value and that  the property's true fair market value was $52,000 as of February 18, 2003.  LBHI

asserts that the inflated origination appraisal for the Olt loan materially and adversely affected the value of the loan and LBHI's interest in the loan.

LBHI asserts that by the time it discovered the falsity of the appraisal, it had already foreclosed on the loan and suffered a resulting loss.  Aurora notified NBA of the alleged breach of representation and warranty and demanded repurchase of the loan by a letter dated February 1, 2006. NBA did not repurchase or provide indemnity for the Olt loan within 30 days of written notice and demand.

LBB purchased the five Dwek loans from NBA in August 2005 and sold them to LBHI, one in late August 2005 and the other four in September 2005.  The applications for the Dwek loans that NBA obtained and sent to LBB misrepresented the real estate owned by the borrower, Solomon Dwek, and his mortgage debts. According to LBHI, when Dwek took out the loans to purchase properties in New Jersey,  he failed to disclose dozens of mortgage debts he had already obtained. Dwek is serving a prison sentence for bank fraud.  Dwek's bankruptcy estate conducted a foreclosure sale in which LBHI obtained title to the properties securing the loans and LBHI then sold those properties at a loss.  LBHI notified NBA of the misrepresentations in the borrower's application and demanded repurchase or indemnity in a letter dated September 14, 2009.  NBA did not repurchase or provide indemnity for the loans within 30 days of written notice and demand.

LBHI moves for summary judgment, arguing the facts are undisputed that NBA breached its obligation to repurchase the loans at issue and that it has suffered $732,898.28 in damages caused by NBA's breach.  NBA argues LBHI is not entitled to summary judgment, and moves for summary judgment on its own, asserting LBHI's claims are time barred, that LBHI's claims on the Dwek loans

are barred by the Dwek Bankruptcy Court orders, and that LBHI has no valid claims against NBA because it acquired no rights against NBA from LBB.  The motions are ripe for determination.

## Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Summary judgment is particularly appropriate when only questions of law are involved.  *See e.g. Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Thus, "the substantive law will identify which facts are material."*Id*. at 248.  An issue of material fact is genuine if it has a real basis in the record, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 568-7 (1986), or when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson, supra*, 477 U.S. at 248.

## Discussion

To establish a breach of contract claim, the plaintiff must prove (1) the existence of a valid contract, (2) performance by the plaintiff, (3) the defendant's failure to perform, and (4) resulting damage. *Clearmont Prop., LLC v. Eisner*, 872 N.Y.S.2d 725, 728 (N.Y. App.Div. 2009).  NBA does not contest the fact that in applying for the loans in question, Dwek failed to disclose the many mortgage debts he had already obtained, or that the Olt loan was based on an inflated appraisal. Instead, NBA argues LBHI's claims are barred by the applicable statutes of limitations, and that LBHI has no legal right to pursue its claims against NBA.  NBA further argues LBHI is collaterally estopped from attempting to establish damages on the Dwek loans, that LBHI cannot show that it is

entitled to repurchase or indemnity, and that LBHI waived it right to damages on the Dwek loans. NBA also challenges the evidence submitted in support of LBHI's motion for summary judgment as to the amount of damages.

1. Statute of Limitations

NBA argues that the six promissory notes that are the subject of this lawsuit were sales of goods within the meaning of Article 2 of the Uniform Commercial Code, and under New York law, there is a four-year statute of limitations to bring suit on a contract for the sale of goods. NBA asserts the causes of action arose at the time NBA sold the loans to LBB in 2003 and 2005, and LBHI filed its complaint on December 13, 2010. Therefore, the claims are time-barred.

In *Amsterdam Sav. Bank FSB v. Marine Midland Bank,* 504 N.Y.S.2d 563 (1986), the court, citing *Oppenheimer v. Title Guaranty & Trust Co.*, 2 N.Y.S.2d 181 (1938), held that a sale of a mortgage is not a sale of goods under Article 2 of the UCC. *See also* 2 Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* §2-105:62 (3rd ed. 2004)(Article 2 does not cover transactions relating to mortgage assignments). NBA argues that when the *Oppenheimer* court held that mortgages were not goods, it noted that unlike certificates of stock, mortgages were not freely traded. NBA asserts that because residential mortgage loans now are freely traded on the secondary market, the Court should find they are goods under Article 2. NBA also argues that reclamation is a remedy only available to sellers of goods, and under the Agreement, "reclamation from bankruptcy of the defaulted mortgage loan" is one of a number of conditions which would trigger NBA's repurchase obligation. This is evidence, NBA argues, that the Agreement recognizes that the loans are goods.

LBHI argues that by its own terms, Article 2 does not apply to "things in action," N.Y. UCC LAW § 2-105(a)(1), and "[i]t has long been the law that a bond, or other obligation, secured by a mortgage lien on realty, is a chose in action." *Flyer v. Sullivan*, 134 N.Y.S.2d 521, 523 (N.Y.Ct. App. 1954). In response, NBA asserts that because mortgage loans are freely sold like stocks, Article 2's exclusion of "things in action," does not apply. Secondly, LBHI points out that Article 2 expressly excludes "investment securities (Article 8)." N.Y. UCC LAW § 2-105(a)(1). Article 8 defines a security as

> an obligation of an issuer or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer: (I) which is represented by a security certificate in bearer or registered form, or the transfer of which may be registered upon books maintained for that purpose by or on behalf of the issuer; (ii) which is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations; and (iii) which: (A) is, or is of a type, dealt in or traded on securities exchanges or securities markets; or (B) is a medium for investment and by its terms expressly provides that it is a security governed by this Article.

N.Y. UCC LAW §8-102(a)(15). LBHI argues that a mortgage loan meets the definition of a security under Article 8 and thus it is exempt from Article 2. Citing *Bache & Co. v. Int'l Controls Corp.*, 339 F.Supp. 341,(S.D.N.Y. 1972), NBA asserts that New York courts have held that Article 2 governs the sale of investments securities. LBHI argues that while New York courts have held the term "investment securities" as defined in Article 8 does not include cooperative apartment stock, *see Silverman v. Alcoa Plaza Assoc.*, 323 N.Y.S.2d 39, 43 (N.Y.App.Div. 1971), and have looked to Article 2 for analogous remedies when there were no other remedies available regarding an investment security, *see Lawrence's Anderson on the Uniform Commercial Code* at §2-105-72, no court has ever applied Article 2's statute of limitations to an investment security when another statute of limitations applies. Finally, LBHI asserts it is well established that because Article 2 does not apply to real estate transactions, it does not apply to "documents relating to a sale of real estate . . .

[or] a mortgage." *Lawrence's Anderson on the Uniform Commercial Code* at §2-105:77.  NBA argues the notes involved here are not contracts for the sale of real estate in the same sense as used in *Anderson* and are merely debt instruments.

The Court finds that mortgage loans are clearly defined as "things in action" and "investment securities" under New York law and, therefore, Article 2 does not apply to them.

NBA argues that LBHI's claims regarding the Olt loan are also barred by New York's six-year statute of limitations on contracts.   As to the Olt loan, NBA argues that the statutory period begins to run in 2003, the date of the sale of the loan from NBA to LBB.  Because LBHI filed its complaint in 2010, NBA says LBHI's claim on the Olt loan is untimely.  In response, LBHI asserts that "[u]nder New York law, a loan seller's failure to repurchase non-conforming loans upon demand as required by a contract is an independent breach of the contract entitling the plaintiff to pursue general contract remedies for breach of contract." *LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.*, 237 F.Supp.2d 618, 628 (D.Md. 2002)(citing *Resolution Trust Corp. v. Key Fin. Servs., Inc.*, 280 F.3d 12 (1ˢᵗ Cir. 2002)).  LBHI demanded repurchase of the Olt loan through a letter dated February 1, 2006, and LBHI could not have sued on that independent breach before that time.

The Court finds that LBHI's action for breach of the Loan Purchase Agreement is governed by New York's six-year statute of limitations for contract actions, and that its claims regarding the six loans are timely.

2.  LBHI's Right to Demand Purchase or Indemnity

NBA argues that although it may have breached its representations and warranties regarding the Dwek and Olt loans, LBHI has no rights to demand repurchase or indemnity.  NBA asserts that at the time LBB signed the Assignment Agreement with LBHI on January 31, 2011, LBB had no

8

rights to assign because LBB had assigned all the loans to LBHI without recourse years earlier.  In support of its argument, NBA points out that on July 31, 2009, LBHI acknowledged to the bankruptcy court that it had no claims against LBB due to the non-recourse assignments.  NBA contends that because at the time of the assignment NBA was not obligated to LBB, LBB had no rights or claims to the repurchase or indemnity provisions to pass to LBHI  Thus, on January 31, 2011, the date of the Assignment Agreement with LBHI, LBB had no loans to cause to be repurchased, no interest in property to be repurchased and no possible way to be damaged.

In addition, NBA argues that there is a genuine issue of material fact as to whether the Assignment Agreement assigned rights under the loan purchase agreement or Seller's Guide or whether the Assignment Agreement merely memorializes a prior agreement.   NBA asserts that "[i]f the loans in question here were made before the purported prior verbal agreement referenced in the recitals, the loans in this case would not be covered by the 'prior agreement.'" [2]

The Assignment Agreement contains the following recitals:

WHEREAS, the Assignor is a party to the Loan Purchase Agreements (which incorporate the Aurora Loan Services Seller's Guide, which was amended from time to time ("the Seller's Guide")), as well as any related guaranty agreements, cross-collateralization agreements, seller agreements, and amendments to those agreements (referred to herein collectively as the "Agreements" and which may have been amended from time to time), pursuant to which Assignor acquired certain residential mortgage loans from certain correspondent sellers of Assignor (referred to herein collectively as "Sellers" and listed on Exhibit A which is incorporated herein by this reference) that Assignor has sold, transferred and conveyed to Assignee (the "Mortgage Loans"); and

WHEREAS, in furtherance of Assignor's sale of the Mortgage Loans to Assignee and of Assignee's investment purposes in acquiring the Mortgage Loans, Assignor and Assignee have previously agreed to have Assignor assign, transfer and convey to Assignee rights and remedies Assignor may have with respect to the Mortgage Loans under the Agreements between Assignor and those Sellers identified on Exhibit A, to

---

[2]NBA's Br. in Supp. of Am. Resp. to LBHI's Mot. Summ. J., docket entry 63 at 29.

the extent such rights and remedies are assignable under the terms of such Agreements, and Assignor and Assignee now wish to documents that prior agreement.[3]

In response, LBHI describes NBA's argument as a tortured interpretation of the January 31, 2011, Assignment Agreement in which LBB assigned to LBHI

any rights it may have under the Agreements with respect to the Mortgage Loans, including any rights it may have in and to any or all representations, warranties or covenants made by the Sellers to the Assignor in the Seller's Guide and/or Agreements with respect to the Mortgage Loans, along with any or all of the remedies Assignor may have against the Sellers with respect to the Mortgage Loans for Seller's breach of any representation, warranty or covenant under the Seller's Guide an/or Agreements, including, without limitation, the repurchase and indemnification remedies.[4]

LBHI argues that with the Assignment Agreement, it stands in the shoes of LBB with all of its rights and remedies.  *See Condren, Walker & Co. v. Portnoy*, 856 N.Y.S.2d 42 (N.Y.Ct. App. 2008)("An assignee stands in the shoes of its assignor . . . ") LBHI argues it does not have to prove that it independently relied on NBA's representations and warranties, that LBB relied upon the warranties set forth in Section 701 of the Seller's Guide and LBHI succeeded to that reliance upon LBB's assignment of its rights.  Thus, in selling LBHI the loans originated by NBA and assigning LBHI the rights and remedies under the Seller's Guide, LBB provided LBHI with both the loans and the rights to sue NBA for subsequent losses on those loans.  As to NBA's contention that the "prior agreement" referenced in the Assignment Agreement could have been an agreement made before LBB sold the loans to LBHI, LBHI argues that the Assignment Agreement defines "Mortgage Loan" as any loan sold from NBA to LBB and then sold from LBB to LBHI, and the loans at issue meet the definition

---

[3]LBHI's Mot. Summ. J., docket entry 26, Ex. D (Assignment Agreement) to Akell Decl. (docket entry 26-7.

[4]LBHI's Mot. Summ. J., Akell Decl. Ex. D, Section 1(a).

of "Mortgage Loan." There is no factual dispute that NBA sold the loans at issue to LBB and LBB

in turn sold the same loans to LBHI.[5] The Court finds the Assignment Agreement assigned to LBHI

the contractual rights in the loans at issue.

3.  Right to Damages on the Dwek Loans

NBA argues the doctrines of *res judicata*/collateral estoppel bar LBHI from establishing

damages on the Dwek Agreement, loans. It further argues it is not required to repurchase or

indemnify LBHI under the Agreement and that LBHI waived its right to damages.

In 2007, Dwek filed for personal bankruptcy in New Jersey. The property securing the

loans owned by LBHI were made part of the bankruptcy estate. By orders entered in May 2008,

the bankruptcy court approved the Dwek bankruptcy court trustee's sale of four properties located

in New Jersey which secured loan numbers 0937, 6596, 8109, and 8595. Acting on behalf of

LBHI, Aurora obtained title to the properties through a credit bid at the auction. In approving the

sales, the bankruptcy court found that the purchase price consisted of an aggregate of a credit bid,

a waiver of deficiency, a $12,500.00 carve out, payment of expenses incurred by the trustee, and

local real estate taxes and assessments. The bankruptcy court found that the purchase price was

---

[5]NBA urges the Court to following rulings made in *Lehman Brothers Holdings, Inc. v. United Bank*, Case No. 5:11cv5051 JLH (W.D. Ark.  March 14, 2012) (order denying summary judgment) and *Lehman Brothers Holdings, Inc. v. Royal Pacific Funding Corp.*, Case No. SACV10-01871-JVS (JEMX) (C.D.Cal. Oct. 21, 2011)(denying summary judgment). In *United Bank*, the district court found that because the assignment agreement dealt with two categories of loans and there was no credible evidence as to which category of loans were involved in the suit, there was an issue of fact as to the existence of a contract between the parties. In *Royal Pacific*, the district court found the assignment agreement did not contain any universal language assigning the plaintiff rights under all loans sold or transferred to it at any time before or after the assignment agreement was made and so a triable issue of fact remained. Here, there is no dispute that all the NBA loans at issue were assigned to LBHI under the Assignment Agreement because NBA admits they were sold to LBHI by LBB.

negotiated in good faith, at arms length, that the purchase price was fair and reasonable and constituted reasonably equivalent value and fair consideration under the Bankruptcy Code.  By order entered on February 24, 2009, the bankruptcy court approved the Dwek bankruptcy trustee's sale of a fifth property in New Jersey which secured Dwek loan number 6462.  On September 14, 2009, LBHI wrote NBA demanding that NBA repurchase the Dwek loans or alternatively indemnify it for losses on the loans.

NBA argues that the four bankruptcy orders filed on May 8, 2008, and the order filed on February 24, 2009, establish that the Dwek loans were satisfied through the acquisition of the properties securing the loans by Aurora on behalf of LBHI.  NBA asserts LBHI is precluded from raising the issue of losses or damages suffered as a result of a breach of warranty under the doctrine of *res judicata*.

In response, LBHI asserts the bankruptcy court did not rule upon the value of the Dwek properties; it merely found that the credit bid put in by LBHI did not provide too little consideration for the properties such that the transaction could be unwound as a fraudulent transfer.  LBHI argues *res judicata*  does not apply because LBHI's claim for breach of contact was not before the bankruptcy court and there was no valid and final judgment regarding the value of the Dwek properties.  Claim preclusion or *res judicata* bars relitigation of a claim if "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies."  *In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997).  The Court finds LBHI's claim for breach of contract was not before the bankruptcy court.

Issue preclusion or collateral estoppel applies only where "(1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment." *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1273 (8th Cir. 1997). The value of the Dwek properties was not at issue in the bankruptcy action; the bankruptcy court merely approved the credit bids for the properties. There was no final judgment as to the value of the Dwek properties nor was the value of the Dwek properties an issue that was essential to the judgment in the bankruptcy court. Therefore, collateral estoppel does not apply.

Section 710 of the Seller's Guide provides that "if Purchaser (or Purchaser's agent or affiliate, or any subsequent owner of the Mortgage Loan or such owner's agent or affiliate) has acquired title to the related Mortgage Property through foreclosure, deed-in-lieu of foreclosure, abandonment or reclamation from bankruptcy of the defaulted Mortgage Loan,"[6] the Seller must repurchase the property or indemnify the Purchaser. LBHI argues that this provision obligates NBA to repurchase the property or indemnify LBHI for losses realized after it is sold. NBA argues that none of the conditions precedent to NBA's obligations under Section 710 have occurred as LBHI acquired the properties through a sale of property under the bankruptcy code which is not the same as a foreclosure sale. NBA also argues that LBHI did not reclaim the properties from bankruptcy because it did not obtain the properties according to the meaning of

---

[6]Pl's. Br. in Supp. Mot. Summ. J., Akell Decl. Ex. C at § 710 (docket entry 26-6).

reclamation under the Bankruptcy Code.   NBA asserts that 11 U.S.C. § 546(c) preserves the rights of a "seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent." Because Dwek was not insolvent when he obtained the properties, and because LBHI was not the seller of the properties, LBHI cannot claim that it reclaimed the properties from bankruptcy or that LBHI's acquisition of the properties through a judicial foreclosure sale conducted by the bankruptcy court was a foreclosure.  The Court finds the parties' contract obligates NBA to indemnify LBHI for its losses from selling the Dwek properties.

NBA asserts LBHI impliedly waived its rights to damages against NBA as to the Dwek loans when it negotiated purchase prices for the five Dwek loans with the bankruptcy trustee for equivalent value.  Such negotiation, NBA argues, is inconsistent with LBHI claiming losses relating to the Dwek loans and indicates an intent not to seek damages against NBA for any losses.  In response, LBHI asserts that the parties' contract provides that "[n]o term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced."[7] According to LBHI, New York law provides that "[a] written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."  N.Y. Gen. Oblig. Law § 15-301(1).  In *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2nd

---

[7]Pl's. Mot. Summ. J., Ex. A at § 9 (docket entry 26-4).

Cir. 1990), the court held that allegations of unwritten waivers were "foreclosed as a matter of law."

The Court finds there is no genuine issue of material fact in dispute as to whether LBHI waived its right to seek damages under the Agreement by negotiating prices for the five Dwek properties with the bankruptcy trustee. There is no evidence of a written agreement to waive such right.

4. Damages

LBHI argues it is entitled to damages in the amount of $732,898.28 plus attorney's fees, costs and post-judgment interest. LBHI says it determined damages by applying the provisions of the contract as to how damages will be calculated to data from LBHI's business records. NBA argues that the evidence of LBHI's damages should be excluded because Robin Akell, the witness sponsoring the business records establishing LBHI's damages, is not a qualified witness to establish that they are business records, and that the records are inadmissible summaries. NBA also argues LBHI is not entitled to prejudgment interest before January 31, 2011, and that LBHI failed to mitigate damages by unreasonably delaying the liquidation of the collateral for the Dwek loans. LBHI argues that under New York law, NBA must establish not only that it "failed to make diligent efforts to mitigate its damages . . . but also the extent to which such efforts would have diminished its damages." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 846 N.Y.S.2d 95, 99 (N.Y.App. Div. 2007)(internal citation omitted).

NBA argues LBHI should have obtained title more quickly to the properties securing the Dwek loans and then sold those properties more quickly. LBHI contends NBA does not state what it should have done or what damages would have been if LBHI had been able to move more

quickly.  NBA submits a declaration from an appraiser who states what LBHI may have been able to sell the properties for if it had been able to obtain title to the properties on the day the bankruptcy court approved the sales but does not submit evidence on amount of commissions, concessions or other expenses that may have been involved in trying to sell the properties so quickly.  Thus, LBHI argues, NBA's mitigation argument is only theoretical and does not make out a prima facie case of a failure to mitigate under New York law.  Furthermore, NBA makes no argument that LBHI failed to properly mitigate its damages on the Olt loan.

The Court finds there is a genuine issue of material fact is to failure to mitigate damages on the Dwek loans.

4.  Other Motions

LBHI filed a motion to compel NBA to respond to its discovery requests regarding repurchase demands from other investors on other loans NBA made to Solomon Dwek.  LBHI argues that the resolution of other Dwek loans is relevant to NBA's affirmative defense that LBHI's full credit bid extinguished any claims LBHI may have.  LBHI argues that if NBA settled other repurchase demands from other investors, that information bears on NBA's valuation and treatment of loans taken out by the same borrower who took out the loans at issue in this lawsuit. The Court finds the motion should be denied.

LBHI moves to disqualify Frederick Wetzel, III and Todd Burnidge.  Mr. Wetzel, an attorney, was to offer testimony on his legal interpretation of a portion of the Seller's Guide.  Mr. Burnidge was to offer testimony as to his 2003 appraisal involving the Olt loan.  In light of the Court's ruling on the summary judgment motions, the Court finds the matter is moot.

NBA filed a motion to allow the video-taped depositions of its experts Gary Shev and Kathleen Princiotti to be used as evidence at trial, and to take the deposition of Todd Burnidge, another expert, and use it for evidentiary purposes.  NBA argues the attendance of Shev, a mortgage banking expert, and Princiotti, an appraiser and expert, would impose a substantial burden on the witnesses and NBA due to the significant distances the witnesses would have to travel to the trial and the expenses to NBA to bring them to the trial.  NBA says that at the time of their depositions, LBHI was aware that NBA intended to present Shev's and Princiotti's testimony at trial by video tape presentation   As to Burnidge, the person who appraised the property securing the Olt loan, NBA says Burnidge has not been retained and has been uncooperative, and even though the discovery deadline has passed, the Court should allow it to take his deposition and use it at trial.

LBHI argues that Shev and Princiotti are under NBA's control and there is no reason they cannot appear at trial at NBA's direction.  Pursuant to Fed.R.Civ.P. 32(a), a deposition may be used if a witness "is more than 100 miles from the place of . . . trial ... unless it appears that the witness's absence was procured by the party offering the deposition" or "the party offering the deposition could not procure the witness's attendance by subpoena."  Fed.R.Civ.P. 32(a)(4)(B) and (D).  Rule 804(b)(1) of the Federal Rules of Evidence provides that the hearsay rule does not apply to testimony of an unavailable witness if the testimony "was given as a witness at a ... lawful deposition. . . . and . . is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination."

"The party seeking to admit the deposition must prove that the requirements of both Rule 32(a)(3) and Rule 804(b)(1) have been met. *United States v. Pelton,* 578 F.2d 701, 709 (8th Cir.),

*cert. denied sub nom.*, 439 U.S. 964 (1978)." *In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987*, 720 F.Supp. 1493, 1502 (D.Colo. 1989).   LBHI argues that while it may be inconvenient for NBA or its hired experts to travel to Arkansas to present testimony "[m]ere inconvenience to the witness does not outweigh the substantial need to evaluate the demeanor of a witness presenting controversial testimony of questionable relevance. Nor does inconvenience outweigh the unfairness of limiting an opponent's right to demonstrate varying interpretations of the facts on which the witness bases his testimony." *Id.*  LBHI argues Shev and Princiotti gave opinions based on the limited information that they were provided by their counsel and both indicated that their opinions might change upon learning more information.

The Court finds NBA has not established that these two witnesses are unavailable for trial. As to Burnidge, the Court finds the deadline for taking his deposition has expired.  The motion is denied.

**Conclusion**

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment [docket entry  26] is granted in part and denied in part.

IT IS FURTHER ORDERED that defendant's sealed  motion [docket entry 29] is denied. The issue of damages will proceed to trial.

IT IS FURTHER ORDERED that plaintiff's motion to compel and motion to disqualify as experts [docket entries 20 & 27] are denied.  Defendant's motion to allow depositions to be used as evidence [docket entry 28] is denied.

DATED this 25th day of June, 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE